FILED

2008 Feb-29  AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL GREENBERG** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NUMBER |
| | ) | **5:07-CV-01509-UWC** |
| **MICHAEL J. ASTRUE**, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Plaintiff Michael Greenberg ("Plaintiff") brings this action for a period of

disability and disability insurance benefits  pursuant to Section 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse

decision of the Commissioner of the Social Security Administration ("SSA").

This Court finds the Administrative Law Judge ("ALJ") did not fully develop the

record.  Therefore, for the reasons elaborated herein, the Court will **REMAND** the

decision denying benefits to the ALR for further consideration.

1

## I.  Procedural History

Plaintiff filed an application for disability insurance benefits on May 19, 2004, alleging disability beginning on October 7, 2002.  This application was denied by the State Agency and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on February 24, 2003.  The ALJ denied benefits on October 27, 2004 and the Appeals Council declined review by form denial on June 21, 2007.  Having timely pursued and exhausted his administrative remedies, Plaintiff filed an action for judicial review in federal district court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.  Factual Background

At the time of the hearing, Plaintiff testified that he was forty-eight years old and had a high school education. Although he has worked intermittently as a grass cutter and a caterer for gold tournaments since being released to return to work in September of 2002, he did not work at the substantial gainful activity level between August 31, 2001 and September 23, 2002.  The vocational expert classified the plaintiff's past relevant work experience as a landscape laborer, heavy equipment operator, forklift truck operator, truck driver, machine operator, and tool mechanic as ranging in exertional levels from heavy to medium.

Plaintiff alleges disability from a fall at work which resulted in a neck

injury, with accompanying numbness, weakness, radiating pain, and shoulder discomfort when lifting objects.  After being treated conservatively with Neurotin and site injections, he underwent corrective three surgeries in the fall of 2001.

Plaintiff alleges that he has attempted to find work but that continued use of his arms and any repetitive motion causes radiating pain and numbness.  However, he also claims to be able to mow his yard, operate a garden tiller, go deep sea fishing, perform basic repairs around the house, and drive to and from the store. (R. 62.)

## A.  Treatment History

The record shows that Plaintiff fell while working as a logger for Drennan Forestry Prime Timber Harvesters in 1999 and developed pain in the neck and right shoulder.  (R. 163.)  Medical records in evidence indicate that Dr. Daniel Michael treated Plaintiff from May of 2001 through at least October 30, 2003.

In May 2001, a diagnostic work up revealed a herniated disk at C5-C6 with accompanying nerve entrapment syndrome.  (R. 162.)  On August 2, 2001, Plaintiff underwent a right shoulder MRI which indicated further shoulder impingement, including joint arthritis, subchondral cystic change over the humeral head, and surface tears of the distal supraspinatus tendon.  (R. 159.)  On August 16, 2001, Plaintiff was diagnosed with C5-C6 disk rupture.  (R. 116, 158.)

3

On September 7, 2001, Plaintiff underwent surgery for his right shoulder impingement syndrome to repair a tear in his rotator cuff. (R. 102.) Two months later, on November 13, 2001, Plaintiff underwent a cervical fusion in order to alleviate symptoms stemming from the disk rupture at C5-C6. (R. 115-17.) On December 21, 2001, he underwent an excision of a subcutaneous mass in the left shoulder. (R. 120.)

On January 9, 2002, Dr. Michael opined that the x-ray of the fusion "looked good." (R. 151.) Dr. Michael injected the trigger points in his right shoulder that were not responding well to therapy. Dr. Michael further opined that massage and physical therapy should continue and, at an appropriate time, Plaintiff should begin doing some work conditioning to try to get him back to a more functional level. (R. 151.) Dr. Michaels recommended seeing Plaintiff again in one month.

On February 13, 2002, Dr. Michaels noted that Plaintiff had experienced flare-ups of localized muscle tenderness around the infra-spinatous muscle in his shoulder. Dr. Michaels placed him on anti-inflammatories. At Plaintiff's follow-up for this problem on February 25, 2002, he was referred to massage therapy for two weeks to treat the numerous trigger point problems around the scapula. (R. 150.)

On March 18, 2002, Dr. Michaels noted that Plaintiff appeared to be

4

benefitting from his massage therapy and suggested continuing it so long as Plaintiff showed improvement. He also noted that "[s]omewhere down the road we will need to get a functional baseline to see where we are in regards to return to work activities." (R.147.)

On April 25, 2002, Dr. Michaels noted slow improvement and reiterated the long term goal of getting plaintiff into some work conditioning in order to build up functional status so that he can reasonably return to some form of reasonable employment. (R. 146.) On May 23, 2002, Dr. Michaels recommended about six or seven more visits with the massage therapist before sending him to do strengthening and work conditioning. He also refilled Plaintiff's pain prescriptions, which included ibuprofen and Lortab. (R. 137.)

On June 13, 2002, Dr. Michaels again noted improvement and further stated that the massage therapist recommended continued therapy. (R. 144.) On July 18, 2002, Dr. Michaels noted that the time had come to begin work hardening. He continued Plaintiff's massage therapy and began a six-week work hardening regimen in order to maximize Plaintiff's strength. (R. 143.) Accordingly, on September 9, 2002, Dr. Michaels x-rayed the spine and noted that Plaintiff was getting close to being released to find work. He noted that Plaintiff should finish up the work hardening in a week's time, at which point a functional capacity

evaluation would be appropriate. (R. 142.)

On September 20, 2002, and September 23, 2002, Plaintiff underwent a Functional Capacity Evaluation at Healthsouth.  During this evaluation, it was recommended that Plaintiff was capable of working for an 8 hour day in the heavy category of physical demands.  (R. 136.)

On September 30, 2002, Plaintiff returned to Dr. Michaels, who noted that he was in agreement with the assessment of the functional capacity evaluation.  He further noted that based upon Plaintiff's injuries and subsequent surgeries, Plaintiff will have a permanent partial impairment of 10% to the body as a whole based on the cervical fusion and an impairment of 6% to the body as a result of the shoulder surgery.  He concluded that this computes to be a 15% impairment on the combined value chart.  (R. 135.)

On December 12, 2002, Plaintiff presented with developing trigger points in the neck after doing some catering work in Miami.  An x-ray revealed nothing remarkable, although a physical examination showed tenderness and trigger points in the thoracic spine over the trapezius region.  He injected the trigger points to try to alleviate the symptoms. (R. 177.)

Plaintiff was not seen again until May 21, 2003.  Plaintiff complained of a drawing sensation in his fingers and elbows when he starts any lifting activity.  (R.

177.)  Dr. Michaels instructed Plaintiff to continue therapy with his Theracane. After a few more visits, Dr. Michaels ultimately opined that there is nothing further that needs to be done from an operative standpoint.  Rather, Plaintiff should consider working in the light duty category.

**B.  ALJ's Decision.**

The ALJ rendered an adverse decision on Plaintiff's claim on October 27, 2004.  To be sure, the ALJ made findings regarding plaintiff's neck and shoulder impairment.  He found that the evidence demonstrates the Plaintiff's severe impairments are a history of a cervical herniated nucleous pulpous at C5-C6 with fusion and impingement syndrome of the right shoulder, which he noted were severe impairments.  (R. 28.)  However, the ALJ found these impairments were not disabling.  Specifically, the ALJ found that Plaintiff's subjective allegations concerning his impairments and their impact on his ability to work were considerably more limited and restricted than is established by the medical evidence and his actual activities.  (R. 29.)

The ALJ found that plaintiff had the residual functional capacity to perform light work, and was capable of lifting 20 pounds occasionally and 10 pounds frequently.  In an eight hour workday, the ALJ found the plaintiff should be capable of sitting, standing, and walking for 6 hours but should avoid overhead

lifting and more than occasional use of the arms and hands.   The ALJ determined that plaintiff could not return to his past work.

However, based upon the testimony of a vocational expert, the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy, such as a garment inspector, an information clerk, or a hand inspector.  (R. 31.)  The ALJ thus found the Plaintiff "not disabled" within the framework of Medical-Vocational Rule 202.21.  (R. 31.)

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits.  *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine whether proper legal standards were applied.  *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a

conclusion.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  In contrast, the Commissioner's legal conclusions are more closely scrutinized.  "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims.  20 C.F.R. § 404.1520 (1983).  The first consideration is whether the claimant is working.  If the claimant is working, she is not disabled.  If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment.  If the claimant does not suffer from a severe impairment, she is not disabled.  If the claimant suffers from a severe impairment, then the Commissioner must consider whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 404.1520(a).  *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no

further inquiry is necessary.

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments.  This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors.  20 C.F.R. § 404.1512.

Additionally, if the medical evidence of record establishes that a claimant was unable to engage in substantial activity for a continuous period of 12 months, but that by a time a disability determination is made, the claimant is no longer disabled, **it is SSA policy to establish a closed period of disability**.  *See* Social Security Administration Program Operations Manual POMS § DI 25510.001 (emphasis added).

Moreover, Social Security proceedings are inquisitorial rather than adversarial;" and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits."  *Sims v. Apfel*, 530 U.S. 103, 120 (2000).  Indeed, the ALJ has a basic duty to fully develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11 th Cir. 1981)

## IV.  Analysis

Although the ALJ provided a thorough enough explanation of Plaintiff's treatment history and impairment and outlined the reasons why it did not rise to the level of disability, this Court must remand the Commissioner's denial of Plaintiff's benefits.  The ALJ failed to consider the possibility of a closed period of benefits from August 31, 2001, when Plaintiff last worked, through September 23, 2002, when the Functional Capacity Evaluation indicated he was capable of working.  Clearly, the ALJ failed to fully develop the record on this issue.

Because the ALJ did not consider whether Plaintiff actually *is* entitled to a closed period of benefits, the Court is unable to adequately evaluate the findings. Moreover, the ALJ's failure even to mention it in his opinion, when Plaintiff's post-operative treatment history between his first surgery and the date of his Functional Capacity Evaluation at the very least suggests it as an avenue worth exploring, runs afoul of the very purpose of Social Security Proceedings.

Accordingly, this Court need not reach whether the medical evidence of record actually entitles Plaintiff to a closed period of benefits because it agrees with the Commissioner that a "reviewing court may not reweigh the evidence." *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11 th Cir. 1990).  However, it is under a continuing duty to ensure that the ALJ fully and fairly developed the

record.

In the case *sub judice*, it is inconclusive at best as to whether this is so. Foremost, the ALJ only mentioned **one** of Plaintiff's three surgeries in his brief explication of Plaintiff's treatment history and, in doing so, improperly described the procedure. Plaintiff's first surgery occurred on September 7, 2001. The record indicates that this surgery was for right shoulder impingement syndrome (R. 21). The ALJ described the surgery as arthroscopic decompression followed by a cervical fusion. (R. 28.) In fact, the arthroscopic decompression did not occur until November 13, 2001.

The ALJ inexplicably completely omitted mention of the surgery on Plaintiff's right shoulder. The ALJ also completely failed to mention the excision the Plaintiff underwent in his left shoulder on December 21, 2001. More likely than not, these matters have some relevance to plaintiff's subjective complaints of soft tissue pain in his neck and shoulders.

These surgeries are of critical importance to Plaintiff's entitlement *vel non* to a closed period of benefits. The Plaintiff was under medical care for a period exceeding twelve months prior to his first functional capacity evaluation. Moreover, Dr. Michaels' treatment notes suggest both explicitly and by inference that Plaintiff was not ready to return to work until he actually was released to do

so in late September of 2002.  (R. 137-151.)  Otherwise, Dr. Michaels would have ordered the functional capacity evaluation at an earlier date.

The ALJ failed to fully and fairly develop the record as to these surgeries, which are highly relevant to Plaintiff's level of impairment during the putative closed period of benefits.

## V.  CONCLUSION

Therefore, by separate order, the decision denying benefits will be remanded for reconsideration of a closed period of benefits between August 31, 2001, and September 23, 2002.

Done the 29th day of February, 2008.

U.W. Clemon
United States District Judge

13